United States District Court
Southern District of Texas
FILED

JUN 2 9 2000

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

RODOLFO VARGAS-LAZARIT,              )
                                     )
v.                                   )        C.A. No. **B-00-100**
                                     )
E.M. TROMINSKI, INS DISTRICT         )
     DIRECTOR                        )
_____)

POINTS AND AUTHORITIES IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS

Comes Rodolfo Vargas-Lazarit, by and through the undersigned, and
files the instant Points and Authorities in Support of His Petition
for Writ of Habeas Corpus, seeking relief from the decisions of the
Board of Immigration Appeals, dated November 21, 1994 and June 21,
2000, ordering his deportation to Mexico.

I. JURISDICTION

Mr. Vargas' petition for review of the BIA's order of June 21,
2000, falls under the transitional provisions of IIRIRA §309(c)(4).
Proceedings were initiated prior to April 1, 1997, and the order
was issued more than 30 days after the enactment of IIRIRA.
Because he was ordered deported on the basis of a controlled
substance violation, he is subject to IIRIRA §309(c)(4)(G), and the
Court of Appeals lacks jurisdiction over the matter. *Lerma de
Garcia v. INS,* 141 F.3d 215 (5th Cir. 1998). Therefore, jurisdiction
lies under 28 U.S.C. §2241. *Requena-Rodriguez v. Pasquarell*, 190
F.3d 299, 306 (5th Cir. 1999), *reh. den.*, 202 F.3d 263 (Table) ("In
actuality, this solution essentially continues the original
streamlining regime - operative from 1961 to 1996 - under which
habeas was available only where direct review was not").

Moreover, since Mr. Vargas' motion to reconsider the decision of November 21, 1994, was filed within the time period permitted for judicial review, in reliance on *Pierre v. INS,* 932 F.2d 418 (5th Cir. 1991), [1] this Court also has jurisdiction over the 1994 decision of the BIA, under *U.S. ex rel Marcello v. INS,* 634 F.2d 964, 971 (5th Cir. 1981) (habeas jurisdiction under 28 U.S.C. §2241 exists to review deportation order where there was no "deliberate bypass" of direct review by the court of appeals). [2]

Jurisdiction under 28 U.S.C. §2241 covers constitutional claims, as well as errors of statutory construction. *Requena-Rodriguez, supra,* ("This jurisdiction is broad enough to encompass Requena's retroactivity claim and his equal protection claim - both of which would have been cognizable even at the lowest pre-IIRIRA ebb of immigration habeas jurisdiction").

## II.   RETROACTIVITY CLAIM
### A.   CASES PENDING AT THE TIME AEDPA WAS ENACTED

In *Requena-Rodriguez, supra* at 308, n.26, the Court explicitly left open the possibility that AEDPA §440(d) did not apply to immigrants whose cases were pending at the time of enactment:

> Requena does not argue that AEDPA § 440(d) should not apply to deportation proceedings that were pending on the date it became effective. Although he contests the Attorney General's ruling in Soriano—which applied § 440(d) to § 212(c) petitions that were pending when AEDPA

---

[1]   *Pierre* held that where a motion to reopen or reconsider filed within the statutory period to seek judicial review of a BIA decision was denied by the BIA, the Court could review both decisions. It was overruled by *Stone v. INS,* 115 S.Ct. 1537 (1995).

[2]   Although later overruled, the existence of *Pierre,* at that time, shows that there was no "deliberate by-pass" of review of the 1994 decision within the meaning of *Marcello.*

became effective--his argument is clearly limited to the
contention that " § 440(d) of AEDPA may not be applied
retroactively to conduct or events, in this case [his]
negotiated plea agreement and the resulting conviction,
that pre-dated the date of enactment of AEDPA."

Petitioner contends, contrary to *Soriano* and consistent with eight
circuit courts, that AEDPA §440(d) should not apply retroactively
to immigrants, such as he, who were placed in proceedings before
its enactment. *See Tasios v. Reno*, 204 F.3d 544 (4th Cir. 2000);
*Magana-Pizano v. INS*, 200 F.3d 603 (9th Cir. 1999); *Wallace v.
Reno*, 194 F.3d 279 (1st Cir. 1999); *Pak v. Reno*, 196 F.3d 666 (6th
Cir. 1999); *Shah v. Reno*, 184 F.3d 719 (8th Cir. 1999); *Mayers v.
INS*, 175 F.3d 1289 (11th Cir. 1999); *Sandoval v. Reno*, 166 F.3d 225
(3d Cir. 1999); *Henderson v. INS*, 157 F.3d 106 (2d Cir. 1998),
*cert. denied sub nom. Reno v. Navas*, 526 U.S. 1004 (1999).

The majority of these circuits have held that Congress did not
intend for AEDPA 440(d) to apply retroactively to immigrants in
proceedings before AEDPA. *See Magana-Pizano*, *supra*; *Pak*, *supra*;
*Shah*, *supra*; *Mayers*, *supra*; *Sandoval*, *supra*; *Henderson*, *supra*; *but
see LaGuerre v. Reno*, 164 F.3d 1035 (7th Cir. 1998), *cert. denied*,
120 S. Ct. 1157 (2000).

And, other than the Seventh Circuit, in *LaGuerre*, all the circuits
which concluded that Congressional intent was unclear, found that
application of AEDPA §440(d) to immigrants in proceedings before
AEDPA would have impermissible retroactive effect. *See Wallace*,
194 F.3d at 287 (noting that "the waiver rules -- once proceedings
have begun -- become a common focus of expectation and even
reliance" and that "[t]he alien's choice of strategy in [the
deportation] proceeding may well be affected by the chances of a
waiver, so one should be cautious about changing the rules after

3

the game has begun."). Indeed, the Fourth Circuit has gone even farther, holding that application of AEDPA 440(d) to immigrants who pled guilty before AEDPA's enactment would have impermissible retroactive effect. *See Tasios*, 204 F.3d at 547-553 (relying on Supreme Court's recent clarification of retroactive effect analysis in *Hughes Aircraft v. United States ex re. Schumer*, 520 U.S. 939 (1997)); *see also id.* at 553 (Luttig, J., concurring). As the Eleventh Circuit observed in *Mayers*, 175 F.3d at 1303 (quoting and citing *Hughes Aircraft*, 520 U.S. at 948):

> Prior to the passage of AEDPA, [immigrants in proceedings] had a statutory right to apply for a § 212(c) waiver. To prohibit them from making such an application now arguably "attaches a new disability" and imposes additional burdens on past conduct.

In *Cantu-Salinas et al v. Trominski et al,* No. 98-41325 (5th Cir. pending), Petitioners/Appellees have urged the Court to adopt the same rule as the great majority of its sister circuits, and conclude that AEDPA §440(d) does not apply to such cases. Oral argument in that case was conducted on June 5, 2000.

B.  IMMIGRANTS WHO RELIED ON THE AVAILABILITY OF §212(c) RELIEF WHEN THEY PLED GUILTY TO THE UNDERLYING CRIMINAL OFFENSE

In *Requena-Rodriguez,* the Fifth Circuit also left open the question of whether §440(d) should apply retroactively where, as here, an immigrant actually relied on the availability of §212(c) relief at the time he plead guilty to a deportable offense. *Id.* at 308: [3]

But [Requena] could not seriously suggest that he would

---

[3]  See *also, Curiel-Sanchez v. Reno,* No. B-99-003, where the Fifth Circuit vacated this Court's decision, which had been based on a finding that §440(d) did not apply to **convictions** which predated its enactment, but remanded for further proceedings consistent with *Requena-Rodriguez, supra.*

4

CEMPDF - www.lextus.com

have refrained from sexually molesting his children, or
changed his plea, had he only known that in addition to
suffering a prison term and a finding of deportability,
he would not be eligible to be considered for a possible
last-ditch reprieve from the Attorney General.

The circuits which have decided this issue have uniformly concluded
that AEDPA §440(d) does not apply under such circumstances. *Mattis
v. Reno*, 212 F.3d 31 (1st Cir. 2000) (holding that §440(d) does not
retroactively eliminate §212(c) relief if the immigrant actually
relied on availability of such relief at the time he pled guilty);
*Magana-Pizano v. INS, supra*, (same). *See also, Tasios v. Reno,
supra,* holding that §440(d) does not apply to guilty pleas entered
prior to enactment.

### III.  THE EQUAL PROTECTION CLAIMS
### A.  INTRODUCTION

In *Requena-Rodriguez, supra,* the Court rejected the contention that
AEDPA §440(d) was unconstitutional **on its face**, for improperly
discriminating against immigrants in deportation, as opposed to
exclusion, proceedings. Similarly, in *Alfarache v. Cravener*, 203
F.3d 381 (5th Cir. 2000), the Court rejected a Due Process
challenge to the timing of proceedings, on the grounds that no
protected interest had been shown. Petitioner herein raises
similar, but not identical issues.

Specifically, he challenges the deportation/exclusion dichotomy **as
applied**, rather than **on its face**, since the justification invoked
in *Requena* would not apply to him. He further asserts that AEDPA
§440(d) also violates Equal Protection because it creates two
otherwise identical groups, where relief is denied to one, and
granted to the other, solely on the basis of whether proceedings
had been completed by an arbitrary date. He claims that,

5

particularly **as applied** to him, this distinction is arbitrary, and bears no relationship, let alone a "fair and substantial" one, to the purposes of AEDPA §440(d).

For both of these reasons, AEDPA §440(d) violates Equal Protection, **as applied**. *See, Plyler v. Doe*, 102 S.Ct. 2382 (1982) (even aliens unlawfully in the United States are entitled to Equal Protection); *Reno v. Flores*, 113 S.Ct. 1439, 1449 (1993) (federal statute reviewed for Equal Protection violation, but none found); *Texas Manufactured Housing Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir. 1996) (to pass Equal Protection muster, factor on which legislative discrimination is based must bear fair and substantial relationship to the objectives of the legislation); *Yeung v. INS,* 76 F.3d 337, 339 (11th Cir. 1996) (statute violates Equal Protection where eligibility for relief based on an arbitrary factor); *Bedoya-Valencia v. INS*, 6 F.3d 891, 895 (2nd Cir. 1993) (same); *Ghassan v. INS,* 972 F.2d 631, 633,n.2 (5th Cir. 1992) (extending §212(c) relief to aliens in deportation proceedings on Equal Protection grounds).

Petitioner's Equal Protection arguments are greatly strengthened by the recent decision of the Supreme Court of the United States in *Troxel v. Granville,* ___ U.S. ___, 2000 WL 712807 (U.S. June 5, 2000). In said case, a plurality of the Court declined to hold that §26.10.160(3) of the Revised Code of Washington, (permitting "[a]ny person" to petition for visitation rights with minor children "at any time"), was unconstitutional **on its face**, but concluded that, **as applied** to the mother of the children at issue, it violated the Due Process clause of the Fifth Amendment of the U.S. Constitution, as applied through the Equal Protection Clause of the Fourteenth Amendment. *Id.* at *6:

Section 26.10.160(3), as applied to Granville [the mother of the children at issue] and her family in this case, unconstitutionally infringes on that fundamental parental right.

In reaching this conclusion, the Court, of necessity, examined the facts of the case. *Id*. at *7 (emphasis added):

Turning to the facts of this case, the record reveals that the Superior Court's order was based on precisely the type of mere disagreement we have just described and nothing more. The Superior Court's order was not founded on any special factors that might justify the State's interference with Granville's fundamental right to make decisions concerning the rearing of her two daughters. To be sure, this case involves a visitation petition filed by grandparents soon after the death of their son--the father of Isabelle and Natalie--but *the combination of several factors here compels our conclusion that §26.10.160(3), as applied, exceeded the bounds of the Due Process Clause*.

*See also, id*. at *9:

Considered together with the Superior Court's reasons for awarding visitation to the Troxels, the combination of these factors demonstrates that the visitation order in this case was an unconstitutional infringement on Granville's fundamental right to make decisions concerning the care, custody, and control of her two daughters.

This case is highly relevant to Petitioner's claim, that, **as applied to him,** AEDPA §440(d) is unconstitutional. *Troxel* demonstrates that the as-applied analysis is distinct from the question of whether a given statute is unconstitutional "on its face," and requires an analysis of the interaction between the statute and the particular facts of the case, in a manner not pertinent to the on-its-face analysis, and therefore not performed in either *Requena* or *Alfarache*.

7

## B.   THE EXCLUSION/DEPORTATION DICHOTOMY

As found in *In re Fuentes-Campos*, 21 I&N Dec. 905 (BIA 1997), AEDPA §440(d) deprives immigrants in deportation proceedings of the opportunity to seek §212(c) relief, but retains eligibility for those under exclusion proceedings.  It is urged that this dichotomy renders AEDPA §440(d) unconstitutional **as applied** to Petitioner. In *Requena-Rodriguez*, the Fifth Circuit found that the denial of §212(c) relief to immigrants under deportation proceedings did not violate Equal Protection, *on its face*, because it allegedly offered a "carrot" (consisting of the opportunity to leave the United States, and, by triggering exclusion proceedings on his return, seek §212(c) relief), to induce immigrants under deportation proceedings to leave the country.

However, Mr. Vargas would not have been able to take advantage of this alleged "carrot."  At the time AEDPA was passed, he was under an order of deportation, and had a motion to reconsider and remand pending before the BIA.  Had he departed the United States at that time, the deportation order would have been executed, and his motion deemed withdrawn.  *See,* 8 C.F.R. §241.7 ("... Any alien who has departed from the United States while an order of deportation or removal is outstanding shall be considered to have been deported, excluded and deported, or removed...").  *See also,* 8 C.F.R. §3.2(d) ("Any departure from the United States ... occurring after the filing of a motion ... to reconsider, shall constitute a withdrawal of such motion.").  Therefore, **as applied** to him, there exists no rational basis for the exclusion/deportation dichotomy, and AEDPA §440(d) violates his right to Equal Protection.

## C.   THE "SPEED OF PROCEEDINGS" ARGUMENT

Petitioner also urges that, under *Logan v. Zimmerman Brush*, 455

8

U.S. 422 (1982), AEDPA §440(d) violates Equal Protection **as applied**, because it discriminates, without rational basis, between two otherwise similarly situated groups, to wit, those whose cases were finalized prior to its enactment, and those whose cases were not so finalized. Formulated as a violation of Due Process, the Court in *Alfarache* rejected a similar argument, on the grounds that the immigrant lacked a protected interest in the availability of §212(c) relief. [4] However, the Court in *Alfarache* limited its analysis to the Due Process claim, and did not consider whether this aspect of §440(d) violated Equal Protection, wherein no such interest need be shown. *See, Requena-Rodriguez*, at p.309, n.34.

Under the statute at issue in *Logan*, if a given claim was not processed within an arbitrary period of time, it was terminated. A majority of the Court found a deprivation of a property interest, without Due Process, and invalidated the statute on those grounds. A *different* majority of the Court also found an Equal Protection violation, in that the statute created two, otherwise similarly situated groups, those who claims were processed in a timely fashion, and those whose claims were not. This majority of the Court found no legitimate state interest, and concluded that the statute violated Equal Protection as well as Due Process.

In the case at bar, AEDPA §440(d) also creates two, otherwise similarly situated groups: those whose cases were finalized before

---

[4] In *Alfarache, supra*, the Court rejected the "speed of proceedings" argument as a Due Process claim, for lack of a protected interest. That case did not, however, reach the issue as one involving Equal Protection, where no such interest is required. *See, Requena-Rodriguez* at page 309, n.34. ("The government contends that an equal protection claim against the federal government must be predicated on the infringement of a "liberty interest" protected by Due Process. This would seem to be a logical result of importing equal protection into the Fifth Amendment, but courts have not made that a threshold inquiry.")

its enactment, and those whose cases were not so finalized. Had the BIA acted on his motion prior to the enactment of AEDPA, Mr. Vargas would still have been eligible for §212(c) relief. Because it did not so act, he was retroactively deprived of that eligibility. As there is no legitimate governmental interest served by this distinction, §440(d) violates Equal Protection for this reason as well.

## IV.  SUSPENSION OF DEPORTATION

Mr. Vargas further urges that the BIA erred, as a matter of law, in concluding that he was ineligible for suspension of deportation under (prior) 8 U.S.C. §1254(a)(2). This issue is currently before the Court in two cases, to wit, *Agado v. Trominski,* No. C.A. B-99-160, and *Coronel-Cardenas v. Trominski*, No. C.A. B-00-058.

The denial of Mr. Vargas' motion to reopen to apply for suspension of deportation was based on two decisions of the BIA: *Matter of Nolasco,* I.D. 3385 (BIA 1999), holding that (new) 8 U.S.C. §1229b(d) applies to applications for suspension of deportation under (former) 8 U.S.C. §1254(a)(1), and *Matter of Mendoza-Sandino,* I.D. 3426 (BIA 2000), holding that, once terminated by the earliest of the events described in §1229b(d), no new period of physical presence accrues thereafter.

However, *Nolasco* is irrelevant. By its terms, it applies only to applications made under (former) §1254(a)(1), the traditional (seven-year) form of suspension of deportation, which is unavailable to persons such as Mr. Vargas, who are deportable for, *inter alia,* controlled substance violations. (New) 8 U.S.C. §1229b(d) would produce an absurd result if it were extended to (former) §1254(a)(2), the (ten-year) form of suspension, available to immigrants who are deportable due to criminal convictions.

10

Mr. Vargas sought suspension under (former) 8 U.S.C. §1254(a)(2), the so-called "ten year" suspension. (Former) §1254(a)(1) requires that the applicant demonstrate seven years of continuous physical presence "immediately preceding" the application. By contrast, (former) §1254(a)(2) requires a showing of ten years continuous physical presence "immediately following" the assumption of the status which constitutes grounds for deportation, in this case, the **conviction** for a controlled substance offense.

(New) 8 U.S.C. §1229b(d), on which *Nolasco* is based, provides, in relevant part, as follows (emphasis added):

> **For purposes of this section,** [8 U.S.C. §1229b], **any period of... continuous physical presence in the United States shall be deemed to end** when the alien is served a notice to appear under section 239(a) [(new) 8 U.S.C. 1229(a)] or **when the alien has committed an offense referred to in section 212(a)(2)** [8 U.S.C. §1182(a)(2)] that renders the alien... removable from the United States under section 237(a)(2) [8 U.S.C. 1227(a)(2)] ... **whichever is earliest.**

Assuming, *arguendo*, that the other problems of construction are overcome, [5] applying (new) §1229b(d) to applications for suspension under (former) §1254(a)(2) would produce an absurd result. §1254(a)(2) requires that the immigrant demonstrate ten years continuous physical presence **immediately following the conviction** for a deportable offense, but, under (new) §1229b(d), the accrual of physical presence would terminate with the **commission** of the offense. In other words, accumulation of continuous physical presence would terminate before it had commenced. This would

---

[5] Including, most notably, the fact that, by its terms, this provision applies only to applications made under that section, to wit, applications for cancellation of removal.

render (former) §1254(a)(2) inoperative. [6] Therefore, (new) §1229b(d) should not be applied, even if otherwise required by its "plain language." *White v. INS,* 75 F.3d 213,216 (5th Cir. 1996) (statute applied according to its plain meaning unless it "would defeat the statutory scheme or create an absurd result").

Further, the "plain language" of (new) §1229b(d) does not require its application herein. The introductory phrase, "[f]or purposes of this section, [8 U.S.C. §1229b]," limits its application to matters arising under (new) 8 U.S.C. §1229b. While the correctness of the holding in *Nolasco* that it also applies to applications under (former) §1254(a)(1) is not presently before the Court, extension of the result reached therein to (former) §1254(a)(2) would not only "defeat the statutory scheme [and] create an absurd result," but would contravene the "plain language" of the statute.

In its decision herein, the BIA also failed to consider the effect of the "whichever is earliest" clause of (new) §1229b(d), under which Petitioner's physical presence would have terminated with the commission of the offense, **not** the issuance of the OSC. Therefore, the amendments made by the Nicaraguan Adjustment and Central American Relief Act, ("NACARA"), adding the issuance of Orders to

---

[6] Assuming, *arguendo*, that, for purposes of applications under 8 U.S.C. §1254(a)(1), *Mendoza-Sandino* correctly concludes that once physical presence terminates it may not re-accrue, it would contradict the express language of (former) §1254(a)(2) to extend its holding to applications brought thereunder. Unlike §1254(a)(1), §1254(a)(2) specifies when the physical presence begins to accumulate. If such physical presence could not accrue following the commission of the offense, no-one would ever qualify for relief under §1254(a)(2), since, by definition, the commission of an offense always precedes the conviction for that offense. Therefore, the application of *Mendoza-Sandino* herein would also "defeat the statutory scheme [and] create an absurd result," within the meaning of *White v. INS, supra.*

Show Cause to the issuance of Notices to Appear, as events which would terminate the accumulation of physical presence, are irrelevant. Here, assuming that (new) §1229b(d) applied at all, the pertinent event terminating the accumulation of physical presence would still be the commission of the offense, not the issuance of the OSC, while by statute, the physical presence needed for relief commenced only with the subsequent conviction.

IV.   THE *NUNC PRO TUNC* AND ADJUSTMENT CLAIMS

In the alternative, Petitioner urges that the BIA erred in not reconsidering his application for §212(c) relief on a *nunc pro tunc* basis. As held in *Matter of Cerna*, 20 I&N Dec. 399, 402 (BIA 1991):

> When we reconsider a decision, we are in effect placing ourselves back in time and considering the case as though a decision in the case on the record before us had never been entered.  If the respondent was eligible for relief at the time the original decision was entered, then in reconsidering the decision we would treat his status as that which it had been at the time of the original decision.

And finally, notwithstanding *In re Gonzalez-Camarillo,* 21 I&N Dec. 937 (BIA 1997), Petitioner asserts that the Board improperly deprived him of the opportunity to seek adjustment of status, in conjunction with a §212(c) waiver of the ground of *exclusion* created by his conviction.   *See, In re Fuentes-Campos, supra*, holding that AEDPA §440(d) does not apply to *exclusion* proceedings.

It is therefore urged that this Honorable Court vacate the instant deportation order, and remand the case to the BIA for further proceedings on (1) his application for §212(c) relief, both as a stand-alone application, and as a request for waiver of the ground of *excludability* created by his conviction, in conjunction with a

request for adjustment of status, and (2) his motion to reopen to seek suspension of deportation under (former) 8 U.S.C. §1254(a)(2).

Respectfully Submitted,

Lisa S. Brodyaga,
Attorney at Law
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was personally served on the Office of Lisa Putnam and Cheri Jones, SAUSAs, 1701 Zoy St., Harlingen, Texas, this 29th day of June, 2000.

14

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


RODOLFO VARGAS-LAZARIT,          )
                                )
v.                              )        C.A. No.
                                )
E.M. TROMINSKI, INS DISTRICT    )
     DIRECTOR                   )
_____)


EXHIBIT "A" IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*

Chairman

5107 Leesburg Pike, Suite 2400
Falls Church, Virginia 22041

NOV 2 1 1994

Lionel Perez, Esquire
P.O. Box 899
Edinburg, Texas  78549

RODOLFO VARGAS-LAZARIT
A34 239 222

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very Truly Yours,

*Mary Maguire Dunne*

Mary Maguire Dunne
Acting Chairman

Enclosure

Panel Members:

MICHAEL J. HEILMAN

FRED W. VACCA

Michael H. Bennett

**U.S. Department of Justi**
Executive Office for Immigratio.. Review

Decision of th       ıard of Immigration Appeals

Falls Church, Virginia 22041

===============================================================

File:   A34 239 222 – Harlingen

Date:

NOV 2 1 1994

In re:   RODOLFO VARGAS-LAZARIT

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Lionel Perez, Esquire
                            P.O. Box 899
                            Edinburg, Texas   78540

ON BEHALF OF SERVICE:   Tammy L. Fitting
                        General Attorney

CHARGE:

   Order:   Sec. 241(a)(11), I&N Act [8 U.S.C. § 1251(a)(11)] –
            Convicted of controlled substance violation

APPLICATION:   Waiver of inadmissibility

ORDER:

   PER CURIAM.   The respondent has appealed from an April 9, 1990,
oral decision, in which an immigration judge found the respondent
deportable as charged under section 241(a)(11) of the Immigration
and Nationality Act, 8 U.S.C. § 1251(a)(11), based upon the
respondent's concessions and conviction records; denied in the
exercise of discretion his application for relief from
deportation under section 212(c) of the Act, 8 U.S.C. § 1182(c);
and ordered him deported to Mexico.   The appeal is dismissed.
The respondent's request for oral argument before this Board is
denied.

   After a de novo review of the record, we agree with the
immigration judge that a favorable exercise of discretion is not
warranted in this case.   See Matter of Burbano, Interim Decision
3229 (BIA 1994); Matter of Coelho, Interim Decision 3172 (BIA
1992); Matter of Cerna, Interim Decision 3161 (BIA 1991); Matter
of Roberts, Interim Decision 3148 (BIA 1991); Matter of Edwards,
Interim Decision 3134 (BIA 1990); Matter of Marin, 16 I&N Dec.
581 (BIA 1978).   As we concur with the facts and reasoning set
forth in virtually all of the immigration judge's 16-page
decision, we will restate the evidence only to the extent
necessary to respond to the respondent's arguments on appeal or
to note our few points of disagreement with the immigration
judge's decision.

A34 239 222

We consider the respondent's criminal history, which includes a May 22, 1989, conviction in the 49th Judicial District Court in and for Zapata County, Texas, for possession of marijuana, a second degree felony, to be an extremely serious negative factor in his record. See Matter of Burbano, supra. We agree with the respondent that Matter of Grijalva, 19 I&N Dec. 713 (BIA 1988) is not on point. See I.J. at 7. However, we disagree with the respondent's assertion that it was "error for the [immigration judge] to assume that the respondent possessed forty-nine (49) pounds [of marijuana]" (brief at 5).

The immigration judge actually found that "the respondent may well have possessed 49 pounds of marijuana" (I.J. at 7). We find no error in the immigration judge's statement. The criminal indictment (Exh. 11) shows that the respondent was accused of intentionally and knowingly possessing more than 200 pounds but not more than 2,000 pounds of marijuana, an aggravated offense. Pursuant to a plea bargain, he pleaded guilty to the lesser and included offense of possession of marijuana, a second-degree felony, in violation of the Texas Controlled Substances Act, Vernon's Annotated Texas Civil Statutes, Article 4476-15 (Exh. 4). It is not disputed that under the statute, which was subsequently repealed, this crime required the knowing or intentional possession of a quantity of marijuana in an amount of more than 5 pounds but less than 50 pounds. The respondent has not submitted evidence to show the actual amount of marijuana which was involved in his case.

The respondent's argument that "the criminal court of the State of Texas believed that the respondent's involvement was minimal" (brief at 4) is meritless. The criminal court found the respondent guilty of a felony and sentenced him to 10 years' imprisonment. We are bound by the record of conviction. See Matter of Roberts, supra, at 10. Though the court suspended the imposition of the sentence, it placed the respondent on 10 years' probation. He remains subject to imprisonment should he fail to comply with the terms of his probation.

The respondent asserts that the immigration judge erred in requiring him to make a clear showing of rehabilitation as a prerequisite to a favorable exercise of discretion. We agree that a showing of rehabilitation is not an absolute prerequisite to the granting of section 212(c) relief in every case. Matter of Edwards, supra. Where the applicant for such relief has a criminal record, however, evidence of rehabilitation will ordinarily be required before relief is granted as a matter of discretion. Matter of Roberts, supra; see Vergara-Molina v. INS, 956 F.2d 682, 685 (7th Cir. 1992). Given the facts of this particular case, we require the respondent, a convicted felon, to present substantial evidence of rehabilitation.

-2-

A34 239 222

The respondent has submitted some evidence of rehabilitation. He has complied with the terms of his probation. He has also acknowledged that illegal drugs are harmful and that persons dealing in them are wrongdoers (Tr. at 35).

The respondent, however, continues to deny his guilt of the drug-related crime for which he stands convicted. Though an acknowledgment of culpability is not the exclusive indicator used in assessing the weight to be accorded his evidence of rehabilitation, it is one aspect which we consider in deciding whether a favorable exercise of discretion is warranted. See Guillen-Garcia v. INS, 999 F.2d 199 (7th Cir. 1993); see also Akinyemi v. INS, 969 F.2d 285 (7th Cir. 1992). Even where rehabilitation is shown, rehabilitation does not by itself compel the favorable exercise of discretion. See Ghassan v. INS, 972 F.2d 631, 636 (5th Cir. 1992), cert. denied, 113 S. Ct. 1412 (1993).

The respondent cites several parts of the immigration judge's decision in support of his argument that the immigration judge "intentionally attempted to slant the evidence in order to deny the relief requested" (brief at 5). We will address his arguments in the order they have been presented.

The respondent takes issue with the immigration judge's statement that the "[r]espondent also has two children with a woman who is not his wife, that being Hermilia Sandoval Vargas" (I.J. at 7). He stresses that the respondent never married Hermilia Sandoval. This argument is frivolous. The respondent acknowledged Hermilia by the name of Hermilia Sandoval Vargas (Tr. at 44). The immigration judge's decision correctly identifies Teresa as the respondent's wife (I.J. at 5, 10-13) and Hermilia as his "paramour" (I.J. at 12).

We find the respondent's claim that the immigration judge slanted the evidence regarding the respondent's immigration history to be factually unfounded or otherwise meritless. An alien's immigration history is clearly relevant in determining whether he merits the favorable exercise of discretion. See Matter of Marin, supra. No conviction is required to consider an alien's history of immigration offenses as a factor in exercising discretion. The fact that the incidents occurred years ago goes only to the weight to be accorded these negative factors.

The respondent admitted that in February 1968, he was arrested by the Service and charged with presenting an altered border crossing card under another name (Tr. at 63). After he illegally reentered the United States in March 1968, he was caught and immediately returned to Mexico (Exh. 14). In 1969 he illegally reentered the United States from Mexico and remained here until he voluntarily left in 1971 to visit his parents (Exh. 14).

-3-

A34 239 222

Later in 1971, he returned to the United States but was arrested
for smuggling 16 aliens (Exh. 14).  When he was arrested by the
Service in 1971, he was driving a van with 16 aliens inside (Tr.
at 63-64).  He was charged with transporting illegal aliens,
sentenced to 90 days in jail, and deported to Mexico under an
alias in September 1971 (Tr. at 37-38, 81-83).

In February 1973, for a violation of 8 U.S.C. § 1325 (improper
entry by an alien) [reduced from 8 U.S.C. § 1324 (bringing in and
harboring certain aliens)], the respondent was jailed for 30
days, then deported to Mexico under a different alias (Tr. at
37-38; Exhs. 12, 14).  In October 1978, an immigration judge
granted him permission to reapply after deportation <u>nunc pro tunc</u>
to June 29, 1973 (Exh. 13).  He entered the United States as an
immigrant in 1973.

Regarding the immigration judge's review of the evidence
concerning whether the respondent had visited Zapata, Texas, in
1987, the respondent asserts that the immigration judge "is
punishing the respondent for having had a meretricious
relationship with another woman" (brief at 7).  Acknowledging
that the respondent denied visiting Texas in 1987, though his
wife testified that he told her he had made such a visit, it is
asserted that "[o]bviously, the respondent had lied to his wife"
(Tr. at 7).

In responding to this argument, we initially note that
counsel's arguments are not evidence.  <u>See Matter of Ramirez-
Sanchez</u>, 17 I&N Dec. 503, 506 (BIA 1980).  The immigration judge
concluded that the respondent had lied to the immigration judge
when he testified that he had not been to Zapata, Texas, before
moving there in 1988 (I.J. at 9-10).  This was one of the
inconsistencies which the immigration judge relied upon in
support of his finding that the respondent's testimony was not
credible. <u>1/</u>

Although we review the record of these proceedings de novo and
may make our own findings of fact, <u>see Matter of Lok</u>, 18 I&N Dec.
101 (BIA 1981), <u>aff'd</u>, 681 F.2d 107 (2d Cir. 1982), we have
nevertheless accorded substantial weight to the credibility
findings of an immigration judge in most cases.  <u>See Matter of
Pula</u>, 19 I&N Dec. 467, 471 (BIA 1987); <u>Matter of Kulle</u>, 19 I&N
Dec. 318, 331 (BIA 1985); <u>Matter of Magana</u>, 17 I&N Dec. 111, 114
(BIA 1979); <u>Matter of Wong</u>, 12 I&N Dec. 733, 735 (BIA 1968);

------------------------------------------------------------------

<u>1/</u>  We do not deem it necessary to make any finding as to whether
the "respondent was continuing to deceive his wife about
Hermilia" (I.J. at 13), as we find that the other evidence in
the record amply supports the immigration judge's adverse
credibility finding.

-4-

Case 1:00-cv-00100    Document 2    Filed in TXSD on 06/29/2000    Page 21 of 38

A34 239 222

Matter of Mazar, 10 I&N Dec. 79, 81 (BIA 1962); Matter of T-, 7 I&N Dec. 417, 419 (BIA 1957); see also Ceballos-Castillo v. INS, 904 F.2d 519 (9th Cir. 1990); Laipenieks v. INS, 750 F.2d 1427 (9th Cir. 1985).

In the instant case, we find no adequate basis for disturbing the immigration judge's adverse credibility determination. The immigration judge stated specific reasons for his adverse credibility finding, including unexplained inconsistencies between the respondent's testimony and other evidence in the record (I.J. at 9-10). In addition to the evidence specified by the immigration judge in support of his adverse credibility finding, we find implausible the respondent's testimony that the $25,000 he had hidden in a shoebox at the time of his arrest constituted savings which he had brought from Mexico (Tr. at 61-62). The respondent's lack of candor in itself weighs against a favorable exercise of discretion. See Matter of Burbano, supra.

We disagree with the respondent's assertion on appeal that the immigration judge "gave no weight to the wife's testimony" (brief at 7). The immigration judge specifically found the testimony of the respondent's wife and daughter to be credible (I.J. at 5) and discussed their testimony in his decision.

The respondent's allegation that the immigration judge "did not even care to mention the emotional hardship that would be brought upon the family" (brief at 8) lacks foundation in fact. See I.J. at 11, 15-16). The respondent's wife testified that she did not believe that she would accompany the respondent to Mexico (Tr. at 94). It is the hardship which would be caused by an alien's deportation which is considered in assessing a request for section 212(c) relief. Any hardship the family would face if the wife and/or minor children remain in the United States would be the result of parental choice, not of the respondent's deportation. Cf. Salas-Velazquez v. INS, __ F.3d __, No. 93-2965 (8th Cir. September 12, 1994); Matter of Ige, Interim Decision 3230 (BIA 1994) (suspension of deportation). We note that five of their nine offspring are over 21 years of age, and two of them are married. The three older ones are lawful permanent residents, and the others are United States citizens.

Though the respondent's lawful permanent resident wife has lived here since 1973, she is a native and citizen of Mexico (Tr. at 109; Exh. 3). She and the respondent's children by her are in good health (Tr. at 94). They all speak Spanish. There is no showing that the minor children have any special needs which would make it unusually difficult for them to live or go to school in Mexico. Relocating to Mexico after living in the United States would require emotional and financial adjustments for them, if they were to accompany him. The same would be true of most families in a similar situation. The fact that their financial situation may well deteriorate in Mexico does not

-5-

establish an outstanding or unusual equity. Most aliens returning to their own countries after residing here would face a lower standard of living, as the standard of living is higher in the United States than in most other countries. There is no showing that the adult offspring could not visit the respondent in Mexico.

No exceptional or unusual equities with reference to the respondent's other children are shown. His two young United States citizen children by Hermilia have no demonstrated health problems or special needs. They have evidently spent considerable time in Mexico with Hermilia, who is a native and citizen of Mexico. Though the respondent has contributed to their support, it appears that they have other financial resources. The respondent testified that Hermilia's mother, who was staying with him along with Hermilia and their two children when he was arrested, had over 4 million Mexican pesos in her purse because "they do have money" (Tr. at 62-63).

In his decision of April 9, 1990, the immigration judge referred to a demonstration of outstanding or unusual equities as a "threshold test" (I.J. at 5). After he entered his decision, this Board held that a proper determination as to whether an alien has demonstrated unusual or outstanding equities in a section 212(c) application can only be made after a complete review of the favorable factors in his case, and therefore the use of the term "threshold test" is deemed to be inappropriate in this context. See Matter of Edwards, supra. The immigration judge, however, clearly considered all of the respondent's equities in the instant case. Thus, the respondent was not prejudiced. See Matter of Santos, 19 I&N Dec. 105 (BIA 1984).

The respondent has asked that the case be remanded for the immigration judge "to consider rehabilitation and properly characterize the record testimony and issue a correct statement of facts and conclusions of law" (brief at 8-9). After de novo review, we see no need for a remand in this case.

In balancing the various factors in the respondent's case, we acknowledge his favorable equities, particularly his family ties and lengthy residence here, which are outstanding and unusual equities. However, when we weigh the equities against his criminal history, meager evidence of rehabilitation, and lack of candor at the hearing, we conclude that a favorable exercise of discretion is not warranted.

Accordingly, the appeal is dismissed.

_____
FOR THE BOARD

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


RODOLFO VARGAS-LAZARIT,          )
                                 )
v.                               )          C.A. No.
                                 )
E.M. TROMINSKI, INS DISTRICT     )
     DIRECTOR                    )
_____)


EXHIBIT "B" IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS

**U.S. Department of Justice**                          Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:   A34 239 222 - Harlingen                          Date:

JUN 21 2000

In re:   RODOLFO VARGAS-LAZARIT

IN DEPORTATION PROCEEDINGS

MOTION

ON BEHALF OF RESPONDENT:     Lisa S. Brodyaga, Esquire

ON BEHALF OF SERVICE:     Tammy L. Fitting
                          General Attorney

CHARGE:

    Order:   Sec.   241(a)(11), I&N Act [8 U.S.C. § 1251(a)(11)] -
                    Convicted of controlled substance violation

APPLICATION:   Reconsideration; reopening


    This case was last before the Board on November 21, 1994, when we dismissed an appeal taken
by the respondent from an Immigration Judge's denial of an application for a waiver of inadmissibility
under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c).  The respondent
has now filed a motion requesting that the Board reconsider affirming the denial of his application for
section 212(c) relief.  The respondent also has filed a motion to reopen in order to pursue suspension
of deportation pursuant to section 244(a) of the Act.  The motions will be denied.

    The respondent has submitted several motions and documents in support of his motions.  We shall
first address the respondent's requests relating to section 212(c) relief.  In this regard, we note that
the respondent is statutorily ineligible for such relief as an "alien who is deportable by reason of
having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any
offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to
the date of their commission, otherwise covered by section 241(a)(2)(A)(i)."  *See* Antiterrorism and
Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA") § 440(d);
*Matter of Soriano*, Interim Decision 3289 (A.G., Feb. 21, 1997); *see also Requena-Rodriguez v.
Pasquarell*, 190 F.3d 299 *rehearing and rehearing en banc denied*, 202 F.3d 263 (5ᵗʰ Cir. 1999).
Since the respondent is no longer statutorily eligible for section 212(c) relief, we find the motions to
be without merit with respect to this form of relief.

A34 239 222

Turning to the respondent's motion to reopen in order to apply for suspension of deportation, we note that the respondent must establish his *prima facie* eligibility for relief before a motion to reopen will be granted. *Matter of Ige*, 20 I&N Dec. 880 (BIA 1994); *Matter of Barrera*, 19 I&N Dec. 837 (BIA 1989); *see also INS v. Abudu*, 485 U.S. 94 (1988). In this regard, under the provisions of the transition rule in section 309(c)(5) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), *as modified by* section 203 of the Nicaraguan and Central American Relief Act of 1997, Pub. L. No. 105-100, 111 Stat. 2193, 2196 ("NACARA"), *amended by* Pub. L. No. 105-139, 111 Stat. 2644, service of an Order to Show Cause ends the period of continuous physical presence required for suspension of deportation under section 244(a) of the Act, 8 U.S.C. § 1254(a). *Matter of Nolasco*, Interim Decision 3385 (BIA 1999); *see also* section 240A(d)(1) of the Act, 8 U.S.C. § 1229b(d)(1).

The respondent entered the United States on June 28, 1973, and the record reflects that the Order to Show Cause was served on May 26, 1989. However, although the respondent had 7 years continuous physical presence prior to the service of the Order to Show Cause, he must establish his eligibility for suspension pursuant to section 244(a)(2) of the Act due to his criminal conviction. *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988); *see also Brown v. INS*, 856 F.2d 728, 731 (5th Cir. 1988). In this regard, section 244(a)(2) of the Act, requires, *inter alia,* that the respondent be physically present in the United States for a continuous period of not less than 10 years immediately following the commission of the Act. Since the Order to Show Cause was served prior to the respondent's acquisition of the 10 years' continuous physical presence, he is ineligible for suspension of deportation under the transitional rule. *See Matter of Mendoza-Sandino*, Interim Decision 3426 (BIA 2000).

Accordingly, the respondent's motions will be denied.

ORDER: The motion to reconsider is denied.

FURTHER ORDER: The motion to reopen is denied.

FOR THE BOARD

*Exhibit No. 1*

## CERTIFICATE OF SERVICE

I, LAURA FLETCHER LEAVITT, certify that today, December 15, 1999, a hard copy of the foregoing brief for appellant was served upon Ms. Paula Offenhauser, Assistant United States Attorney, Appellant Division Chief, Southern District of Texas, by mailing the same Certified Mail No. Z 257 396 017, Return Receipt Requested, postage prepaid to P. O. Box 61129, Houston, TX 77208-1129, and served by Certified Mail No. Z 257 396 019, Return Receipt Requested, postage prepaid upon Raymundo Gonzalez-Garibay, Reg. No. 82756-079, Federal Correctional Institution, P.O. Box 5050, Oakdale, LA   71463.


Laura Fletcher Leavitt
LAURA FLETCHER LEAVITT

Exhibit No. 2

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS

**FILED**

JUN 2 7 2000

No. 99-40766
Summary Calendar

CHARLES R. FULBRUGE III
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAYMUNDO GONZALEZ-GARIBY,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. B-99-CR-20-1

Before HIGGINBOTHAM, DeMOSS and STEWART, Circuit Judges:

PER CURIAM:[*]

The Federal Public Defender appointed to represent Raymundo Gonzalez-Garibay
("Gonzalez") has moved for leave to withdraw and has filed a brief as required by Anders v.
California, 386 U.S. 738 (1967). Gonzalez has filed a response. Our independent review of the
brief, Gonzalez's response, and the record discloses no nonfrivolous issues. Accordingly, the motion
for leave to withdraw is GRANTED, counsel is excused from further responsibilities herein, and the
APPEAL IS DISMISSED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4 .



Exhibit No. 3

Registro del Estado Civil — Estado de Nuevo León

960575

En nombre de la República de México y como Oficial —1o.—
del Estado Civil en esta Municipalidad hago saber a los que la
presente vieren y Certifice ser cierto que en el Libro número —UNO—
del Registro Civil que es a mi cargo, correspondiente al año de
1967 en la foja 169 se encuentra asentada un acta del tenor

siguiente:(AL MARGEN)ACTA No.168 NACIMIENTO DEL NIÑO---
RAYMUNDO GONZALEZ GARIBAY,AL CENTRO.-En ciudad Anáhuac-
Edo.de Nuevo León siendo las 14.10 horas del día 3 de -
Junio de 1967,ante mí Profr.Francisco P.Lazcano,Oficial
1o.del Registro Civil en ésta ciudad comparecié ante és
te Juzgado Civil de mi cargo al Sr.Juan González de 22-
años de edad,americano,católico,casado por el civil,jor
nalero,originario y vecino de ésta ciudad y dijo que en
su casa habitación sita en ésta ciudad y como a las 8 -
horas del día 8 de Abril de 1967 nació un niño vivo a -
quién puso el nombre de RAYMUNDO GONZALEZ GARIBAY,hijo-
legítimo en 3er.lugar del compareciente y de su esposa-
la Sra.Ma.Vicenta Garibay de 21 años de edad,mexicana,-
católica,de ocupación en el hogar,originaria y vecina -
de ésta ciudad,Son abuelos paternos del niño los Sres.-
Higinio González y Cecilia Ruíz de 60 y 44 años de edad
originarios de San Juan de Sabinas,Coah.,y Nich,Texas,
y abuelos maternos los Sres.Víctor Garibay y Felipa Mu-
ñoz de 60 y 46 años de edad,originarios de San Pedro de
las Colonias,Coah.,y La Barranca,N.L.,Siendo testigos -
de éste acto los Sres.Roberto Córdoba y Pedro Portales-
ambos casados,mayores de edad y de ésta vecindad.Todo -
lo que se hace constar en la presente acta le fué leída
al compareciente y testigos quienes conformes con su --
contenido firmaron conmigo el Oficial.Doy Fé.PROFR.FRAN
CISCO P.LAZCANO,JUAN GONZALEZ,ROBERTO CORDOBA,PEDRO POR
TALES.(RUBRICAS).-

Es copia fiel que concuerda con su original la que se-
expide a solicitud del interesado para los usos y fines-
civiles que a sus derechos convengan.

Cd.Anáhuac,N.L.,Febrero 15 de 1972
EL OFICIAL 1o.DEL REGISTRO CIVIL



GONZALO S.MONTEMAYOR LOZANO

Case 1:00-cv-00100    Document 2    Filed in TXSD on 06/29/2000    Page 29 of 38

1/28/99   2     Arraignment held before Magistrate Judge John W. Black Ct
                Reporter: Gabriel Mendieta, ERO    F/Govt Adela K Garza AUSA
                F/Deft Sandra Zamora AFPD, , filed., Plea of Not Guilty:
                , Raymundo nmi Gonzalez-Garibay (1) count(s) 1, 2 (oa)
                [Entry date 02/01/99]

1/28/99   3     SCHEDULING ORDER as to Raymundo nmi Gonzalez-Garibay
                setting Motion Filing deadline on 2/8/99 ; Motion Response
                deadline 2/19/99  Motion Hearing 9:00 2/23/99 ; Pretrial
                Conference for 1:30 3/4/99 ; Jury Selection for 9:00 3/8/99
                for Raymundo nmi Gonzalez-Garibay ;   before Judge Hilda G.
                Tagle ( Signed by Magistrate Judge John W. Black ),
                entered. Parties ntfd.  ETT: 1 (oa) [Entry date 02/01/99]

2/8/99    9     MOTION by Raymundo nmi Gonzalez-Garibay to dismiss
                Indictment , filed. (oa) [Entry date 02/09/99]

2/8/99    10    Excludable Delay Worksheet XE start 2/8/99 as to Raymundo
                nmi Gonzalez-Garibay , filed. (oa) [Entry date 02/09/99]

2/11/99   11    RESPONSE by USA  as to Raymundo nmi Gonzalez-Garibay re:
                [9-1] motion to dismiss Indictment  , filed. (oa)
                [Entry date 02/11/99]

2/11/99   12    RESPONSE by USA  as to Raymundo nmi Gonzalez-Garibay re:
                [7-1] motion for discovery, [7-2] motion for inspection of
                evidence, [6-1] motion in limine extraneous offenses, [5-1]
                motion to produce exculpatory and mitigating evidence,
                [4-1] motion to suppress statements  , filed. (oa)
                [Entry date 02/11/99]

2/11/99   13    MOTION by USA  as to Raymundo nmi Gonzalez-Garibay for
                Reciprocal Discovery , filed. (oa) [Entry date 02/11/99]

2/23/99   14    Motion hearing held re: mooting [13-1] motion for
                Reciprocal Discovery , mooting [9-1] motion to dismiss
                Indictment , mooting [7-1] motion for discovery , mooting
                [7-2] motion for inspection evidence , mooting [6-1] motion
                in limine extraneous offenses , mooting [5-1] motion to
                produce exculpatory and mitigating evidence , mooting [4-1]
                motion to suppress statements as to Raymundo nmi
                Gonzalez-Garibay (1) before Judge Hilda G. Tagle  Ct
                Reporter: B. Record  Interpreter: Karen Pena  F/Govt Don
                Calvert AUSA F/Deft Sandra Zamora AFPD, filed.   Deft will
                plea at Final Pretrial; motions withdrawn. (oa)
                [Entry date 02/23/99]

3/4/99    15    Pre-trial conference held before Judge Hilda G. Tagle Jury
                Selection for 9:30 3/10/99 for Raymundo nmi
                Gonzalez-Garibay Ct Reporter: B. Record Interpreter: Sandra
                Cortez F/Govt Don Calvert AUSA F/Deft Sandra Zamora AFPD ,
                filed.,  Govt's Oral Motion to Fingerprint GRANTED. Trial
                to begin 3/11/99. (oa) [Entry date 03/05/99]

Docket as of November 15, 1999 10:36 am                    Page 4

Exhibit No. 5

# FEDERAL PUBLIC DEFENDER
## Southern District of Texas
Lyric Office Centre
Post Office Box 61508
Houston, Texas 77208-1508

FEDERAL PUBLIC DEFENDER
ROLAND E. DAHLIN II

First Assistant:
THOMAS S. BERG

July 5, 2000

Telephone:
(713) 718-4600
Fax:
(713) 718-4610

Mr. Raymundo Gonzalez-Garibay - <u>Certified Mail No. Z 257 381 185</u>
Reg. No. 82756-079
FCI - Oakdale
P.O. Box 5050
Oakdale, LA 71463

Re: <u>United States v. Raymundo Gonzalez-Garibay</u>, Fifth Cir. No. 99-40766

Dear Mr. Gonzalez-Garibay:

The Federal Public Defender's legal representation of you has ended with the disposition of your case on June 27, 2000. You previously were found eligible for legal representation at government expense under the Criminal Justice Act. We are sending to you with this letter the transcripts of the proceedings in your case, which we ordered and received on your behalf under the Criminal Justice Act.

Enclosed are the following transcripts in your case:

| Date | Hearing | No. of Volumes |
|------|---------|----------------|
| 03-10-99 | Motion Hearing | 1 |
| 03-11-99 | Jury Trial | 2 |
| 06-10-99 | Sentencing | 1 |

The transcripts enclosed herein are yours to keep. They are the only transcripts that we have, and we are not retaining any copies of them. You thus should keep these transcripts in a safe place because you might have to pay the district court to get copies of them again if they are lost.

Very truly yours,

LAURA F. LEAVITT
Asst. Federal Public Defender
Southern District of Texas

LFL:ccm
Enclosures

N:\WPDOC\ENDREP\ I APP\TRANSCRI RG\

*Exhibit No. 6*

UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
FILED

MAR 11 1999

Michael N. Milby, Clerk of Court

## JURY NOTE

Note Number: _____1_____          Case Number: B-99-020-01

Dear Judge Tagle:

☐   We would like to take a break until _____:_____.

☐   We have reached a verdict.

☑   Can we have the legal definition of a
U.S. citizen as stated by the judge
during the trial.
    Was is the law pertaining to the
citizenship of a child born in Mexico to
a U.S. citizen parent. (Gov. Exhibit 12)

*Letícia Leal*
Foreman

*If you need to communicate with the judge,*
*please complete this form and hand it to the marshal.*

0 38

37



Exhibit No. 7



*Exhibit No. 7(a)*

## ALIEN REGISTRATION RECEIPT CARD
Form I-151 Rev. 1-54

This card will be honored at any point of entry and passport or registration when presented and returned from a country or an area specified in Part 211 of Title 8, Code of Federal Regulations, which are otherwise expatriating, and is not otherwise excludable under immigration laws. If travel in such countries or areas, or absence of such a person is to be avoided, consult Immigration and Naturalization Service office before you depart as to who they are. You should apply for another document. Notify I. & N. Service of address changes during January each year and within ten days after such change of address. Obtain forms from any Immigration or Post Office. You registration number as shown on the other side of this card should be included in all communications to the I. & N. Service.

*Commissioner of Immigration and Naturalization*
**UNITED STATES DEPARTMENT OF JUSTICE**

8 5 · · · · · 2





Exhibit No. 8

561 (REV. 10-1-70)

UNITED STATES OF AMERICA

No. AA270595

CERTIFICATE OF NATURALIZATION

Application No. A17 302 697

Personal description of holder as of date of naturalization: Sex __Male__ complexion __Dark__ color of eyes __Brown__ color of hair __Black__ height __5__ feet __8__ inches; visible distinctive marks __Mole, to right of right eye__ Marital status __Married__

I certify that the description given is true, and that the photograph affixed hereto is a likeness of me.

57393

Now therefore...

Declaration that...
JUAN RUIZ GONZALEZ, 366 Briggs, San Antonio, Texas

then residing at...

...2nd...
...July...
...Seventy-six...
...June 27, 1966...
...December 17, 1944...

IT IS PUNISHABLE BY U.S. LAW TO COPY, PRINT OR PHOTOGRAPH THIS CERTIFICATE.

DEPARTMENT OF JUSTICE

COMMISSIONER OF IMMIGRATION AND NATURALIZATION

# SELECTIVE SERVICE SYSTEM

ACKNOWLEDGMENT LETTER



67-1765118-3     10     70325-C70676

RAYMUNDO   GONZALEZ
BOX 128 #427235
TENNESSEE COLONY, TX  75861-0128

March 25, 1987

If corrections are necessary
mail completed form to:

Selective Service System
P.O. Box 4636
North Suburban, IL  60197-4636

Date of birth: 04-08-67

Dear Mr. GONZALEZ,

This is your Registration Acknowledgment Letter, which you should keep as proof of your registration with the Selective Service System.  A Change/Correction Form has also been included.  Use the form to correct information currently in your Selective Service record.

Federal law requires that until January 1 of the year you reach age 26 you:

1. Notify Selective Service of errors and changes within 10 days of the date of change.  Examples are listed below.

   — Errors in your record (such as date of birth).

   — Changes in your current address (the place where you currently live).

   — Changes in your permanent address (a place where you can always be reached; for example, your parents' address).

   — Legal name change.

2. Provide your Social Security Account Number to Selective Service.

Failure to comply with these requirements is a violation of the Military Selective Service Act.  The maximum penalty for a violation of this Act is a $250,000 fine or five years in prison or both.

IMPORTANT NOTE:

Federal and State laws require registration-age men applying for some benefits (such as student financial aid, Federal employment, job training, etc.) to be registered with Selective Service.  Please keep this letter as legal proof of your registration. Or, you may keep only the wallet size Registration Acknowledgment provided below for your convenience.

For information about your rights and obligations, and the claims and appeals process in effect if inductions are authorized, write to the Consumer Information Center, Department 588R, Pueblo, CO.  81009, for a free copy of "Information for Registrants."

| Registration Acknowledgment | | Selective Service System | | | |
|---|---|---|---|---|---|
| Selective Service Number | Date of Birth | Social Security Number | Phone | Sex | Last Action Date |
| 67-1765118-3 | 04-08-67 | 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 | — — | M | 03-25-37 |
| Name and Current Address | | | Permanent Address | | |
| RAYMUNDO   GONZALEZ BOX 128 #427235 TENNESSEE COLONY, TX  75861 | | | BOX 128 #427235 TENNESSEE COLONY, TX  75861 | | |
| Wilfred L. Ebel Acting Director | *Wilfred L. Ebel* | | Registrant's Signature | *Raymundo Gonzalez* | SSS Form 3A (MAR 86) |

*Exhibit No. 9*

*Exhibit No. 10*



**LFC** industries inc.
*"manufacturer of precision aerospace fasteners"*

1221 Corporate Drive • P.O. Box 5982
Arlington, Texas 76006  (817) 640-1322
Fax (817) 652-1566

January 8, 1999

Raymundo Gonzalez
1810 Alhambra St
Dallas, TX  75217

Dear Raymundo,

Due to the uncertainty of your ability to return to work, or the date of such return we are unable to maintain your employment status.

We do regret your misfortune, as we have very much valued your job performance. In the event that you can return to LFC please call us and we can discuss any opportunity that may be available.

We wish you luck.

Regards,
LFC Industries

Tim Probstfield
V. P. / Operations Mgr.

*Exhibit No. 11*

```
DAXCRM10                    RELATED CRIMES (CRIM)              DATE: 01/19/2000
                                                              TIME: 16:16:14
        A-NUMBER: 034656413              DCO: OAK
        LAST NAME: GONZALEZ GARIBAY      FIRST NAME: RAYMUNDO

CRIME            DESCRIPTION             STATUS    STATUS     DOC-ISS   DOC-REQ/
CODE                                     CODE      DATE       CODE      REC DATE

2299      BURGLARY                         C       06/25/1985
3532      COCAINE - POSSESS                C       01/21/1994
0301      ILLEGAL ENTRY                    C       06/10/1999
1199      SEX ASSLT                        C       07/11/1986




        *** PRESS ENTER--FOR UPDATES   PF1--NEXT PAGE  PF2--PREVIOUS PAGE
                                 PF5--HELP        PF7--CRIME CODE LIST ***
                COMMAND: CRIM            A-NUMBER: 034656413

NO MORE CRIMES FOUND
```

*Exhibit No 12*

# DISCIPLINE HEARING OFFICER REPORT
## U.S. DEPARTMENT OF JUSTICE

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

| INSTITUTION | F.C.I. Oakdale | INCIDENT REPORT NUMBER | | 825553 |
|---|---|---|---|---|
| INMATE NAME | Gonzalez-Garibay | REG. NO. | 82756-079 | UNIT | Eva 1 |
| DATE OF INCIDENT | 10-19-00 | DATE OF INCIDENT REPORT | | 10-19-00 |
| OFFENSE CODE(S) | 224 / 104 | | | |
| SUMMARY OF CHARGES | Assault / Possession of a Weapon | | | |

### I. NOTICE OF CHARGE(S)

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on (date)  10-20-00  at (time)  13:00  (by staff member)  J. Johnson, Lt.

B. The DHO Hearing was held on (date)  11-14-00  at (time)  09:25 am

C. The inmate was advised of his/her rights before the DHO by (staff member): Marie Ortega, Unit Manager  on (date)  10-24-00  and a copy of the advisement of rights form is attached.

### II. STAFF REPRESENTATIVE

| A. Inmate waived right to staff representative. | Yes: | No: | x |
|---|---|---|---|

B. Inmate requested staff representative and  Scott Ardoin  appeared.

C. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:

| D. Staff representative | was appointed. |
|---|---|

E. Staff Representative Statement: I have reviewed the incident report with inmate Gonzalez-Garibay and discussed it with him.

### III. PRESENTATION OF EVIDENCE

| A. Inmate admits | x | denies | the charge(s). |
|---|---|---|---|

B. Summary of inmate statement:

I chased them with the lock after they assaulted me.  Yes, I was going to get them back and use the lock.  They thought I had a rape charge, but it is a kidnaping charge.

| 1. The inmate requested witness(es). | Yes: | No: | x |
|---|---|---|---|

2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.)